United States District Court
Southern District of Texas
**ENTERED**
November 22, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KARL A. AVILA & | § | |
| JENNIFER TAYLOR, | § | |
| Petitioners, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-111 |
| | § | |
| HARLINGEN INDEPENDENT | § | |
| CONSOLIDATED SCHOOL | § | |
| DISTRICT & PRISCILLA AMY | § | |
| MORALES ANDERSON, | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On July 23, 2021, Defendant Priscilla Amy Morales Anderson removed this case from the 357th District Court in Cameron County, Texas. Dkt. No. 1. Defendant Harlingen Consolidated Independent School District ("HCISD") has consented to the removal. Dkt. No. 12.

Plaintiffs Karl A. Avila and Jennifer Taylor are suing Anderson and HCISD, pursuant to 42 U.S.C. § 1983, for actions they claim led their son, Jake, to commit suicide. Dkt. No. 6.

On October 13, 2021, HCISD and Anderson filed a motion to dismiss. Dkt. No. 9. The motion has been fully briefed. Dkt. Nos. 13, 14.

After reviewing the record and the relevant case law, it is recommended that the motion to dismiss be granted. The Plaintiffs have not shown that Jake's constitutional rights were violated.

### I. Background

In deciding a motion to dismiss, the Court must "accept all well-pled facts as true and view all facts in the light most favorable to the plaintiff." Melendez v. McAleenan, 928 F.3d 425, 427 (5th Cir. 2019). The factual background is written with this standard in mind.

Jake Avila was a sixth grade student at Memorial Middle School in Harlingen, Texas, during the 2018-2019 school year. Dkt. No. 6, pp. 2-3.  Anderson was his teacher for his Pre-AP reading class. Id.  During the school year, Jake had "grade problems" in that class. Id.  When Avila and Taylor reached out to Anderson to help isolate and identify the source of the issues, Anderson was "curt and unhelpful." Id.

On April 23, 2019, Jake had a failing grade – a 57 out of 100 – in Anderson's class. Dkt. No. 6, p. 3.  Anderson gave Jake a score of zero for "several days" during this grading period. Id., p. 4.

On April 25, 2019, Jake used a gun to commit suicide. Dkt. No. 6, p. 3.  In his suicide note, Jake wrote "a specific passage related" to Anderson. Id.  The complaint does not quote the note, but states that "Jake imputed this tragedy on Ms. Anderson." Id.

The complaint alleges that Anderson "has a long history of harassing students including Jake." Dkt. No. 6, p. 3.  One student, L.Z., took a prescription medication that caused drowsiness; Anderson "humiliated him and made him stand to stay awake." Id.  Another student once accidentally dropped all of her pencils; Anderson "intending to humiliate[] her kicked her out of class." Id., p. 4.  That student claimed that Anderson told her class "that they would not amount to anything and that their class was like a 'Special Ed' class." Id.  The complaint also states that Anderson was known for calling her students "idiots." Id., p. 3.  The complaint does not identify any harassment or comments aimed at Jake other than his low grades.

## II. Procedural History

On April 23, 2021, Avila filed a petition in the 275th District Court in Hidalgo County. Dkt. No. 1-4, p. 2.  On June 28, 2021, the petition was transferred to the 357th District Court in Cameron County, Texas. Id.  In that petition, Avila sued Anderson for wrongful death for her treatment of Jake. Id., p. 8.

Prior to removal, a first amended complaint was filed in state court, which added Taylor as a plaintiff and HCISD as a defendant. Dkt. No. 1-18, p. 2.  In that petition, Avila and Taylor seek relief from HCISD and Anderson for:  (1) violating Jake's Fourteenth

Amendment Due Process rights; (2) Jake's Fifth Amendment rights; and (3) wrongful death. Id.

On July 23, 2021, Anderson removed the case to this Court on the grounds that the constitutional claims created federal jurisdiction. Dkt. No. 1.  HCISD has consented to the removal. Dkt. No. 12.

On September 29, 2021, Avila and Taylor filed a second amended complaint. Dkt. No. 6.  In that complaint, they sued HCISD for violating Jake's Fourth and Fourteenth Amendment rights and they sued Anderson for violating Jake's Fifth and Fourteenth Amendment rights. Dkt. No. 6, p. 9.  They are also suing for wrongful death, but do not identify if they are suing both defendants or only one defendant, as to that cause of action. Id., pp. 9-10.

On October 13, 2021, HCISD and Anderson filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. No. 9.  As to the constitutional claims, HCISD and Anderson argue that while Jake's suicide was tragic, there was no state action involved to make it into a § 1983 claim.  Furthermore, as to the Fourth and Fifth Amendment claims, they argue that the Plaintiffs have not pled how Jake's rights were violated.  As to the Fourteenth Amendment claims, HCISD argues that the Plaintiffs have not shown the existence of a policy or custom that violated Jake's constitutional rights.  Anderson asserts that she is entitled to qualified immunity for any Fourteenth Amendment claims.  As to the wrongful death claims, both HCISD and Anderson claim immunity under the Texas Tort Claims Act.

On November 3, 2021, Avila and Taylor filed their response. Dkt. No. 13.  In it, they explicitly state that they "do not oppose dismissal" of their Fourth and Fifth Amendment claims or their wrongful death claim. Id., pp. 1-2.  They ask that the wrongful death claim be dismissed without prejudice, but make no explicit request as to the Fourth and Fifth Amendment claims.  As to the Fourteenth Amendment claim, they do oppose dismissal.  As to HCISD, they argue that the district failed to adequately train and supervise its employees, allowing employees to harass students. Id., p. 4.  As to Anderson, they argue that they have pled sufficient facts to overcome her invocation of qualified immunity. Id.

3

On November 10, 2021, HCISD and Anderson filed their reply brief, re-urging the arguments made in their motion to dismiss. Dkt. No. 14.

## II. Applicable Law

### A. Dismissal Under Rule 12(b)(6)[1]

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 140 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (internal quotation marks omitted).  The Supreme Court has further defined the Twombly standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Unless the Court specifically holds otherwise, dismissal for failing to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

### B. Section 1983

As relevant here, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[1] Anderson and HCISD sought dismissal of the wrongful death claim under Rule 12(b)(1). Because the Plaintiffs do not oppose dismissal of that claim, the Court will not discuss the Rule 12(b)(1) standard. Lindsey v. Cty. of Dallas, 2020 WL 572873, at *5 (N.D. Tex. Feb. 4, 2020) (Court "need not reach the merits" of a claim abandoned by the plaintiff).

injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

### C. Municipal Liability

A municipality cannot be held liable under § 1983 on a theory of respondeat superior. Monell v. Dep't of Soc. Services, 436 U.S. 658, 691 (1978). Thus, a municipality can be subjected to civil liability if the allegedly illegal conduct is "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Robinson v. Hunt Cty., Texas, 921 F.3d 440, 449 (5th Cir. 2019), reh'g denied (May 16, 2019) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)).

A claim made against a school district under § 1983 is a claim for municipal liability. Dearman v. Stone Cty. Sch. Dist., 832 F.3d 577, 581 (5th Cir. 2016). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). These elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Id.

"A claim for failure to train must allege sufficient facts to show that (1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate

5

indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury." Speck v. Wiginton, 606 F. App'x 733, 736 (5th Cir. 2015).

### D. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "'One of the most salient benefits of qualified immunity is protection from pre-trial discovery.'" Zapata v. Melson, 750 F.3d 481, 484-85 (5th Cir. 2014) (quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)).

If a defendant claims qualified immunity, the burden shifts to the plaintiff to establish the inapplicability of that defense. Terwilliger v. Reyna, — F.4d —, — 2021 WL 2850052, at *3 (5th Cir. July 8, 2021) (citing Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009)). To survive a claim of qualified immunity – in a motion to dismiss under FED. R. CIV. P. 12(b)(6) – the plaintiff must have pled "specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988); Cobb v. City of Harahan, 516 Fed. App'x. 337, 340 (5th Cir. 2013) (unpubl.) (citing Geter).

The two-part test for qualified immunity requires the Court to determine: (1) whether defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendant's actions. Pearson v. Callahan, 555 U.S. 223 (2009).

### E. Fourteenth Amendment

"To state a cause of action under § 1983 for violation of the [Fourteenth Amendment] Due Process Clause, plaintiffs must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir. 1994) (quoting Griffith v. Johnston, 899 F.2d 1427, 1435 (5th Cir. 1990)) (internal quotation marks omitted).   "Although the right to life is obviously an interest of constitutional dimension, its deprivation alone cannot give rise to a claim under section 1983." Dollar v. Haralson County, 704 F.2d 1540, 1543 (11th Cir. 1983).   "Courts have declined to recognize as a general rule a person's affirmative right to state protection, even when such protection may be necessary to secure life, liberty, or property interests." Walton v. Alexander, 20 F.3d 1350, 1354 (5th Cir. 1994).

## III. Analysis

The Plaintiffs originally raised four claims: (1) wrongful death, (2) Fourth Amendment violation; (3) Fifth Amendment violation; and (4) Fourteenth Amendment Due Process Clause violation. Dkt. No. 6.  They do not oppose the dismissal of the first three claims and the Court recommends that all three claims be dismissed.  Thus, the Court will analyze the only contested remaining claim, the Fourteenth Amendment claim.

The Court notes that Jake's death is undeniably tragic.  It sympathizes with the pain that the Plaintiffs continue to experience, even if it cannot fully appreciate it.  But the Court's role is not a roving educational administrator that judges the parties based on best practices or what it thinks should happen. See Hull v. Quitman County Bd. of Educ., 1 F.3d 1450, 1452 (5th Cir. 1993) ("this court sits not to review the wisdom of a school board's actions, but their constitutionality").  Thus, the Court will view the Fourteenth Amendment claim through that lens.  It will first examine the claims against HCISD and then the claims against Anderson.

**A. HCISD**

In order to hold HCISD liable for violating Jake's constitutional rights, the Court must consider (1) whether Jake's rights were violated and (2) whether a HCISD policy or custom was the moving force behind the violation of those rights.

### 1. Violation of Rights

The Plaintiffs argue that Jake's Fourteenth Amendment rights were violated. The Court finds that this argument is not well-taken.

Under the Fourteenth Amendment, schoolchildren have the "right to be free of state-occasioned damage" to their bodily integrity. Doe v. Taylor., 15 F.3d at 450. However, Jake took his own life outside of school property with no school officials present. The damage to his bodily integrity was not state-occasioned; HCISD had no constitutional duty to protect him from private violence. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). An off-campus suicide attempt is an act of private violence. Wyke v. Polk County School Board, 129 F.3d 560, 569 (11th Cir. 1997).

There is one exception to this rule that is recognized by the Fifth Circuit: the "special relationship" test. Robinson v. Webster Cty., Mississippi, 825 F. App'x 192, 195 (5th Cir. 2020). Under this test, the state must protect an individual from private harm not because of the state's knowledge "of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Robinson, 825 F. App'x at 196 (quoting DeShaney, 489 U.S. at 200). In other words, when the state restricts an individual's ability to act on their own behalf, it has a duty to protect that individual from private danger. This usually arises in the context of correctional facilities, mental institutions, and foster care, where the government holds a person in custody against their will. Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 856 (5th Cir. 2012). However, the Fifth Circuit has repeatedly held that school districts do not have a special relationship with students that requires them to protect the students from harm by private actors. Id., at 857-58 (collecting cases). Accordingly, this exception is inapplicable.

Other circuit courts have recognized a second exception, the "state-created danger" theory, "applicable when the state affirmatively created or exacerbated a dangerous situation that led to a person's injury." Robinson, 825 F. App'x at 195 (pointing out the Fifth Circuit's decision to not recognize such an exception, citing Kovacic v. Villarreal, 628 F.3d 209, 214 (5th Cir. 2010)). Indeed, while this exception could arguably apply to the facts of this case, the Fifth Circuit has repeatedly declined to recognize such an exception. Robinson, 825 Fed. App'x at 195-96 (collecting cases). The Court is no position to recognize a right that the Fifth Circuit has repeatedly declined to recognize. See Alvarez v. City of Brownsville, 904 F.3d 382, 398 (5th Cir. 2018) (en banc) ("district courts are bound to follow circuit precedent unless it directly conflicts with Supreme Court precedent").

Furthermore, the Fifth Circuit has held that, within a school setting, "verbal abuse does not give rise to a constitutional violation." Wyatt v. Fletcher, 718 F.3d 496, 504 (5th Cir. 2013) (citing Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002)). Indeed, there is no caselaw holding that a teacher's offensive remarks violate the Constitution. In fact, all cases that have decided the issue have held the opposite. See Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (a teacher's "demeaning and belittling references to his students" and "his use of patently offensive language" did not violate his students' constitutional rights); Abeyta By and Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1254-58 (10th Cir. 1996); Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916, 919, 921 (8th Cir. 2001); Totty v. Indep. Sch. Dist. No. I-009 of Blaine Cty. Oklahoma, No. CV-08-572-F, 2010 WL 11606954, at *8 (W.D. Okla. Apr. 14, 2010); Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 585 (M.D. Pa. 2014), aff'd, 644 F. App'x 172 (3d Cir. 2016); Walker–Serrano by Walker v. Leonard, 168 F.Supp.2d 332, 347 (M.D. Pa. 2001); Acadia Ins. Co. v. Hinds Cnty. Sch. Dist., 2013 WL 2182799, at *5 n. 4 (S.D. Miss. May 20, 2013) ("It is self-evident that a student's constitutional interest in bodily integrity does not extend to allegations of verbal abuse") (emphasis original).

Accordingly, while the Court does not condone the use of demeaning language toward students, the Court should find that Jake's constitutional rights were not violated.

Even if they were violated, the Plaintiffs have not shown the existence of a policy or custom, as set out below.

### 2. Policy or Custom

In order to support municipal liability against HCISD, the Plaintiffs must introduce facts showing that there was a policy or custom that was the moving force behind Jake's suicide.  Simply stated, the Plaintiffs fail to meet this burden.

The Plaintiffs must show that: (1) HCISD failed to train or supervise Anderson; (2) there is a causal connection between the failure to train and the alleged violation of Jake's rights; and (3) the failure to train constituted deliberate indifference to Jake's constitutional rights. Hutcheson v. Dallas Cty., Texas, 994 F.3d 477, 482 (5th Cir. 2021).

The Plaintiffs allege that HCISD had cursory training on not harassing students and no training on suicide prevention.  The Court will assume, without deciding, that these allegations are sufficient to meet the first element.  Given Jake's suicide note, the Court will similarly assume, without deciding, that there was a causal connection between the lack of training and his suicide.  But the Plaintiffs have not shown that the failure to train constituted deliberate indifference.

As to the third element – deliberate indifference – the Plaintiffs must show a "pattern of similar constitutional violations by untrained employees." Hutcheson, 994 F.3d at 482. The Plaintiffs have provided no evidence of similar violations; there has been no showing that any other student has been bullied into committing suicide by an HCISD staff member. While the Plaintiffs have pled that other students were mistreated by Anderson, they have not pled any facts showing that any HCISD officials were aware of Anderson's behavior. If HCISD officials were not aware of her behavior, then they did not act with deliberate indifference. See Winston v. City of Shreveport, 390 F. App'x 379, 385 (5th Cir. 2010) ("for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The Plaintiffs argue that this case falls within the single-incident exception. Dkt. No. 13, pp. 4-5.  "The 'single incident exception' is extremely narrow; a plaintiff must

prove that the <u>highly predictable consequence</u> of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." <u>Valle v. City of Houston</u>, 613 F.3d 536, 549 (5th Cir. 2010) (emphasis original; internal quotation marks omitted).  "[T]he exception is generally reserved for those cases in which the government actor was provided no training whatsoever." <u>Pena v. City of Rio Grande City</u>, 879 F.3d 613, 624 (5th Cir. 2018).

While the Plaintiffs have pled that Anderson was given no training on suicide prevention, the Court cannot say that Jake's suicide was the highly predictable consequence of such failure.  As the Fifth Circuit has recognized, albeit in a slightly different setting, "[s]uicide is inherently difficult for anyone to predict." <u>Domino v. Tex. Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).  The Plaintiffs have not pled any facts showing that Jake gave enough signs that he was about to commit suicide such that suicide prevention training would have allowed Anderson (or any other HCISD staffer) to notice his intentions and act to stop them.

In short, HCISD's failure to train or supervise Anderson did not constitute deliberate indifference.  Accordingly, the Plaintiffs' municipal liability claim against HCISD should be dismissed.

**B. Anderson**

Anderson has invoked qualified immunity.  The Court finds that qualified immunity is unnecessary because Anderson did not violate Jake's constitutional rights.  Even if Anderson did violate his rights, she is entitled to qualified immunity because those rights were not clearly established.  This conclusion in no way condones the purported words or actions that Anderson allegedly employed.

**1. Violation of Rights**

As previously noted, there is no violation of Jake's constitutional rights in this case. The harm to Jake was tragically self-inflicted off of school grounds.  The Constitution does not protect against private harm by non-state actors. <u>DeShaney</u>, 489 U.S. at 197.  Jake's off-campus suicide was an act of private violence. <u>Wyke</u>, 129 F.3d at 568-70.

Furthermore, under binding Fifth Circuit precedent, the Plaintiffs are foreclosed from arguing that Anderson "affirmatively created or exacerbated a dangerous situation that led to a person's injury." Robinson, 825 F. App'x at 195-96.  Anderson has no need for qualified immunity because she did not violate Jake's rights. Lytle v. Bexar County, 560 F.3d 404, 410 (5th Cir. 2009).  Moreover, Anderson's alleged comments to students, while regrettable and inappropriate, do not violate the constitution. Gooden, 214 F.3d at 955; Wyatt, 718 F.3d at 504.

Even if the Court were to find that Anderson violated Jake's constitutional rights, it would find that those rights were not clearly established.

### 2. Clearly Established

The Court must consider whether Anderson's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.  The Court believes that the law was not clearly established.

Indeed, the law within the Fifth Circuit recognized that school officials do not have a special relationship with students that requires them to protect the students from private harm. Doe ex rel. Magee, 675 F.3d at 856 (emphasis added).  In fact, the Fifth Circuit does not hold government employees responsible for creating a dangerous situation that leads to private harm. Robinson, 825 F. App'x at 195-96.

Simply put, there was no clearly established law that put Anderson on notice that her actions were unconstitutional.  Accordingly, if she violated Jake's constitutional rights, she would be entitled to qualified immunity, which undermines this claim. See Irwin v. Santiago, No. 21-10020, 2021 WL 4932988, at *2 (5th Cir. Oct. 21, 2021) (In short, "[a] defendant is entitled to qualified immunity if his conduct did not violate" the plaintiff's "clearly established" constitutional rights).

The Plaintiffs have requested that if the Court were inclined to find that Anderson was entitled to qualified immunity, it should require Anderson to file an answer specifically invoking qualified immunity and then allow the Plaintiffs to file a Rule 7(a) reply that specifically addresses qualified immunity. Dkt. No. 13, p. 7. The appropriateness and

necessity of such an order is left to the Court's discretion. <u>Anderson v. Valdez</u>, 845 F.3d 580, 590 (5th Cir. 2016).  The Court believes that such an order is unnecessary in this case.

The Plaintiffs have already amended their complaint twice.  The Court should not be utilized as a mere quality control mechanism. <u>Jacquez v. Procunier</u>, 801 F.2d 789, 792 (5th Cir. 1986) ("[P]laintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold."). Furthermore, it seems highly unlikely that the Plaintiffs could plead additional facts that would show that a constitutional violation occurred in this case.  Jake's death happened off-campus at his own hand; those tragic facts all but ensure that a constitutional violation did not occur.  Simply put, "not every injury is an injury of constitutional magnitude." <u>Goodman v. Kimbrough</u>, 718 F.3d 1325, 1333 (11th Cir. 2013).

## IV. Recommendation

It is recommended that the motion to dismiss filed by Harlingen Consolidated Independent School District and Priscilla Amy Morales Anderson, Dkt. No. 9, be granted.

The claims made under the Fourth, Fifth and Fourteenth Amendment should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The wrongful death claim should be dismissed without prejudice.

To the extent that the Court finds that Anderson violated Jake's constitutional rights, it should hold that Anderson is entitled to the protections of qualified immunity.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings

on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs.</u>, L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on November 22, 2021.

Ronald G. Morgan
United States Magistrate Judge